Potter *v.* Titcomb.

## POTTER *Judge, vs.* JOSEPH TITCOMB, *Administrator of estate of Moses Titcomb.*

If an administrator know of the existence of notes of hand, belonging to the estate of his intestate, deposited in the hands of a stranger, and do not cause them to be inventoried, within the time prescribed by statute, it is a breach of the administration bond.

Nor is it less his duty thus to do, though he, himself, was the promissor in the notes. — Nor even though he *deny* or does not *admit* them to be due.

In a suit on an administration bond, the defendant pleaded special performance. The plaintiff replied, that two certain promissory notes, (describing them) given by the defendant to the deceased, came to, and were *in the knowledge of the defendant* within three months next following the date of the bond declared on, and that he had not caused them to be inserted in the inventory, as he should have done. The rejoinder alleged that said notes were not *known* and *admitted* by the administrator *to be due.* In the surrejoinder the plaintiff alleged that the notes at the time when, &c. were justly due from the defendant and were a part of the goods and chattels, rights and credits, of the intestate, of all which the defendant was *well knowing* within said three months, and concluded to the country. To which the defendant demurred, assigning causes. *Held,* that by the demurrer the facts stated in the surrejoinder were admitted; and it thereby appearing that " a true and " perfect inventory" had not been returned, there was a forfeiture of the bond, — that the bond was not saved by returning an inventory, if it were not a *true* one.

*Held* further, that the surrejoinder was not bad for omitting to answer the averment in the rejoinder of the defendant's *non-admission* of his indebtedness, it being an *immaterial* averment.

Nor was the surrejoinder bad for concluding to the country; it containing a direct denial of the only material allegation in the rejoinder.

Nor was it bad for multifariousness. A party is not precluded from introducing *several matters* into his plea, if they are constituent parts of the same entire defence, and form one connected proposition.

THIS was an action of debt brought upon a Probate bond, and is the same case reported in 7 *Greenl.* 302. The defendant pleaded that, within three months from the granting of letters of administration, *viz. Feb.* 28, 1804, he did make and return a true inventory of the estate of said *Moses Titcomb,* including all debts to the estate, which were *known* and *admitted* by the defendant to be due ; — that he had fully administered the same ; — and that before the commencement of this suit he had settled in the Court of Probate, three accounts of administration, and had paid over to the heirs the sum of $10,853, 21 : — that no other estate of said deceased ever came to the possession, or knowledge, of the defendant ; — that he has never been cited to render any further inventory of said estate, or any further account of his administration.

The plaintiff replied that, at the time of the granting of administration as aforesaid, the defendant was justly indebted to the estate of the said *Moses Titcomb* on two promissory notes of hand ; one dated *Aug.* 26, 1799, for $454,04, payable in two years with interest ; and another dated *Aug.* 10, 1804, for $4450, payable in three years and interest. Which notes on the 28th *Nov.* 1804, the time when administration was granted, and the bond executed, were a part of the *goods, chattels, rights* and *credits,* of said *Moses Titcomb,* all which, afterwards, and within three months, came to the knowledge of the defendant, and of which it was his duty to have made a true and perfect inventory, and the same to have exhibited in the Registry of the Court of Probate for the County of Cumberland, at or before the 28th of *Feb.* 1805, according to the intent, effect and meaning of said bond, and the conditions thereof ; — and avers that he did not exhibit such inventory as aforesaid.

The defendant rejoined that, the said notes were not *known* and *admitted* by him to be due, and as being a part of the goods, chattels, rights and credits of said *Moses Titcomb* de-

ceased, to be administered on in manner and form as the plaintiff had alleged, — and that he had never been *cited* to render an *inventory* or *account* thereof.

The surrejoinder averred that, the notes at the time alleged in the replication, to wit, *Nov.* 28th, 1804, were justly due from the defendant, and were a part of the goods, chattels, rights and credits of the said *Moses Titcomb* deceased; — and that of these facts, before the 28th day of *Feb.* 1805, the defendant was *well knowing,* and tendered an issue to the country.

To this, there was a demurrer and joinder.

The causes assigned were 1. that the surrejoinder did not traverse or deny the rejoinder, nor confess and avoid it.

2. That it avoids taking issue on the rejoinder, and turns to put in issue an allegation which the rejoinder had avoided, to wit, the making and existence of the notes, and did not deny that the defendant did not know and admit the notes to be due.

3. That the surrejoinder did not allege that the defendant knew and *admitted* the notes to be due, and to be administered on as a part of the estate of the deceased. Nor did it aver that he had been *cited to inventory, or account* for, the same ; nor deny that he had not been so cited.

4. That, it undertook to set up *foreign* and *independent* and *issuable* matter, as though it were in reply and repugnant to the rejoinder, without protesting or traversing the allegation in the rejoinder — and did not conclude as it ought with a verification, but irregularly to the country.

5. That, it did not directly and distinctly deny the *substance* and *gist* of the rejoinder — and that if it purported in any manner to be a negative of the rejoinder, it was pregnant with the truth thereof. Therefore it confessed the truth and undertook to avoid the effects of the rejoinder by implication and argument only.

6. That it undertook to offer an affirmative, and tender an issue thereon, by way of reply to the rejoinder, without negativing or noticing the averment of the rejoinder, and therefore, came to no proper point.

7. That it did not present a proper issue of fact made upon an affirmative and negative thereof; but irregularly and inartificially attempted to raise an issue upon two different and independent affirmatives; — or it sought to narrow and alter the issue offered by the rejoinder, so as to substitute a different question of fact from what the rejoinder proposed.

8. That, it was multifarious and divisible; — that it set forth and alleged two separate, distinct and issuable matters or facts, '1. the legal indebtedness of the defendant on said notes, —.and 2. his *knowledge* of such indebtedness.

9. That it was irrelevant, inconclusive, &c. &c.

*N. Emery, Longfellow, Greenleaf* and *Daveis,* were of counsel for the defendant.

*Daveis.* The whole case turns upon the question, whether the defendant can be compelled to answer in any other way than by being *cited* into Probate Court.

By the administration bond, the administrator is bound to render an inventory, and *but one.* He *is bound to* render an account, and *but one.* If it be sought to charge him any *further,* he must be cited — and no action can be sustained on the bond *until he is cited. Dickinson v. Hastings,* 1 *Mass.* 41; *Boylston v. Boylston,* 4 *Mass.* 318; *Nelson v. Jaques,* 1 *Greenl.* 139; *Dawes Judge v. Boylston,* 9 *Mass.* 357; *Paine v. Fox,* 16 *Mass.* 129; *Hooker v. Bancroft,* 4 *Pick.* 53.

After the administrator has returned an inventory and rendered an account, the bond *quoad* these points, is *functus officio.* 2 *Fonblanque,* 418, *note b; Catchside v. Orrington,* 3 *Burrows,* 1922; *Toller on Ex.* 198.

What is the object of an inventory? To limit the liability of the administrator. *Toller on Ex.* 250.

An inventory is *prima facie* evidence that it contains all the property. If it do not, then he shall be required to answer further, in such manner that his own oath will be available to him. *Phillips v. Bignell,* 1 *Phillemore's Eccles. Rep.* 239; *ib.* 224; 2 *Phillemore,* 56; *Toller on Ex.* 252; *Commonwealth v. Bryan,* 8 *Serg. & Rawle,* 128.

If the administrator returns an inventory, however *imper-*

*fect* it may be, yet the bond is saved. After that, there can be no action till citation. 2 *Brownlow's Parliamentary Cases, Blunt v. Burrows*, 1 *Ves.* 546; *Stevens v. Gaylord*, 11 *Mass.* 256; *Robbins v. Hayward*, 16 *Mass.* 524; *Newcomb v. Wing*, 3 *Pick.* 168; *Cringan v. Nicholson*, 1 *Hen. and Mum.* 428; *Judge of Probate v. Briggs*, 5 *N. H. Rep.* 66; *Powell on Con.* 413, 414.

The receipt of a sum of money by an administrator, of which he has not rendered an account, is no breach of his administration bond.

The rights of the parties must first be ascertained and established, before they can have a suit on the bond, — both as to creditor and heir.

The bond in this case was not forfeited by a neglect to inventory the notes given by the administrator to his intestate. It is true, they were known to exist, but they were known to be *not due*. Can he be required to inventory disputed claims against himself? Shall he not have an opportunity to have these settled at law? Suppose the case of a claim against the administrator bound by the statute of limitations. Is he bound to inventory this demand? Or take the case of an equitable offset. Is he bound to inventory the demand against himself, without setting off?

*Fessenden* and *Shepley*, for the plaintiff.

The principal questions in this case are 1. whether a suit can be maintained against an administrator on his bond, for *not returning an inventory*. 2. Whether *accounting* is tantamount to returning an inventory. 3. Whether there be any necessity to cite the administrator to return an inventory before a suit can be brought on the bond.

The duty to return an inventory is one enjoined by statute. It is one of great importance, as well as to have it returned as *early* as the statute requires. Great facilities exist in such cases for embezzling the estate, and putting it out of the way. And the greater the lapse of time, the greater would be the difficulty to say what belonged to the estate.

The duty is also enjoined by the bond. By that also he is bound to render a *true* and *perfect* inventory. The position taken on the other side therefore, that if an inventory be returned, though a *false one*, the bond is saved, is not tenable. It would be a gross evasion of the law, and the positive requisitions of the bond. The law not only enjoins the duty, and requires the bond to be given for its performance, but also prescribes the judgment that shall be rendered in case of noncompliance. That is, that, where the administrator having received personal property of his intestate, and has not returned an inventory thereof, judgment shall be rendered against him for such part of the penalty of the Probate bond as the Court may consider reasonable. *Maine Stat. ch.* 51, *sec.* 72 ; *Dawes Judge v. Edes & al.* 13 *Mass.* 177 ; *Boston v. Boylston,* 4 *Mass.* 318 ; *Dawes Judge v. Boylston,* 9 *Mass.* 357 ; *Paine Judge v. Gill & al.* 13 *Mass.* 368 ; *Parsons v. Mills & al.* 1 *Mass.* 431, and in 2 *Mass.* 80.

2. Is this neglect to *return an inventory* distinct from a neglect *to account ?*

It is recognised as such by the statute, and is required to be thus inserted in the bond — a different mode of remedy is also prescribed in case of neglect, and a different penalty provided. They are so distinct that cases may exist where it would not be in the power of the Judge to accept one for the other. An administrator who has neglected to return an inventory, may be dead — or after such neglect he may be removed, in such cases surely he could not be summoned in. Or suppose the administrator neglects to inventory notes against himself — they become outlawed — and the administrator dies — what remedy have the heirs but on the bond ?

3. Must the *citation* precede the suit on the bond ?

It is contended that such citation is unnecessary. The reason for the distinction between returning an inventory, and accounting, is that an inventory is to be returned once, and *but once ;* while in regard to the other the administrator cannot be considered as accounting in the sense of the statute until he has accounted for the whole estate, however many separate accounts, or however great a length of time it may take for that

purpose. The law not requiring or authorising a second inventory to be returned, it would be absurd to contend that the administrator should be cited into Probate Court to do it. *Hooker v. Bancroft, 4 Pick.* 53.

4. There is no distinction between property in the hands of a stranger and that in the hands of the administrator himself. The statute creates no such distinction. The bond makes no such distinction. They require him to inventory all property *within his knowledge.* If the statute had made any such distinction it would have been administering to iniquity — it would have increased the facilities for defrauding creditors and heirs, and would be placing temptations before the administrator to embezzle the estate. It is contended that he was bound to inventory all the property of the intestate that was within his knowledge in whosoever hands it might be.

Nor, in case of notes, is it of any consequence whether any equitable offsets exist or not. He is still bound to inventory them. Take the notes in question; were they the property of *Moses Titcomb ?* Could he have maintained an action of trover for them ? If so, the administrator was bound to inventory them. It is of no consequence whether they have been in part paid, or an equitable offset exist, or not ; the *notes,* the property, whether valuable or not, was the property of the intestate, and should therefore be inventoried.

As to the questions on the pleading, they cited, *Bennett v. Filkins,* 1 *Saund.* 14, notes 1 and 2 ; *Digby v. Fitzherbert, Hob.* 101 ; *Haymen v. Gerrard,* 1 *Saund.* 103, *note* 1 ; *Barker v. Thorald,* 1 *Saund.* 48 ; *Salman v. Smith,* 1 *Saund.* 206 ; *Newman v. Moore, Hob.* 80 ; *Osborn v. Rogers,* 1 *Saund.* 267 ; *Hancock v. Prowd,* 1 *Saund.* 328 ; 2 *T. R.* 439 ; *Hayman v. Truant, Raym.* 199 ; *Ld. Abbington v. Merrick,* 3 *Saund.* 403 ; *Treewithy v. Ackland,* 2 *Saund.* 48 ; *The King v. Coke, Cro. Chas.* 384 ; *Potter v. Titcomb,* 7 *Greenl.* 312.

*Greenleaf,* in reply for the defendant, thought there was a misconception on the part of plaintiff's counsel of the meaning of the language used in the pleading. Legal phraseology in pleading is to be construed like all other language. It is

to be interpreted by the *animus loquentis* — the meaning of the parties.

The plaintiff charges the defendant with not inventorying the notes. — The defendant answers, " that was a disputed " claim." — He admits the notes were genuine, and in existence ; but no more. He denies that they constituted a just claim against him. In saying that he did not " admit" the debt to be due, he meant, that he considered the notes *not to be due*, that they were in dispute, and that therefore he did not inventory them ; not that, though the notes *were due*, yet he had never *admitted the fact*.

When the plaintiff sues the defendant on the bond for not inventorying these notes, the latter excuses himself by the fact that his liability was controverted. So that, the true question was, not whether the defendant was in law liable to pay ; but whether the claim was, or was not, in reality and *bona fide* disputed. The defendant pleads the latter — the plaintiff replies the former — which is no answer to the plea.

This brings up the question whether the matter of the plea is *issuable* — i. e. Whether it is a *material averment*. In other words, is an administrator, at his peril, to settle the question of his own legal indebtedness, without resort to judicial tribunals ; and to inventory a claim against himself, the validity of which is denied ?

He is bound to return *an* inventory within three months. And has done so. Also to render an account within a year. Which he did. Also to administer all the estate that has come to his hands. This is in dispute.

It is to be observed that the pleadings do not charge the defendant with a *fraudulent omission* to inventory the notes. Now if he omits, *without fraud*, a *disputed claim*, how can this be a breach of this part of the bond ?

Suppose an administrator by the purest *accident* omits to inventory a small and trifling piece of property. Is the bond therefore, forfeited ? Suppose he *knew* that the intestate had sold certain property without receiving pay for it at the time, but *could not recollect to whom*, nor find any note or charge, at the time of making the inventory. Must the supposed debt

be inventoried, or the bond forfeited ? Suppose he find a note among intestate's papers against a stranger which he, the administrator, knew to be paid, and was the only witness of the fact. Is he bound in such case to inventory it ? Contend that he is not. The reasonable construction of the statute is, that the administrator shall inventory what he knows, or has good reason to believe, is the property of the intestate.

He is bound to inventory only what goes to the heirs, widow, or creditors. Not a *donatio causa mortis* ; — therefore if he is donee, he need not inventory the thing given.

Again, in case of property not known at the time of making the inventory, but afterward discovered ; — what is to be done with it ? According to the argument on the other side, the administrator must call together the appraisers, and have it appraised, though it be but a *tenpenny nail,* on pain of forfeiting his bond ! The correctness of this course is denied. The condition in the bond to *account,* is a *full security* to all parties — what need of more ?

But again, before this suit could be maintained, the defendant was *entitled to a previous citation.*

1st. on *principle.* The Probate Court is the peculiar forum for settling all the rights and liabilities of the administrator in relation to the estate. It is unreasonable to compel him to litigate in various tribunals at the same time. Different Courts may adopt *different rules* in fixing his liabilities. The Probate Court has original and exclusive jurisdiction of *the estate,* and of the rights of all persons in relation to it, till *final distribution.* Courts of common law are only ancillary to it ; and only in specified cases — As to settle a creditor's claim, disallowed by Commissioners — or to *enforce its decrees,* by an action on the bond ; which is in the nature of a *writ of execution,* the Court of Probate not having power to issue one. The administrator is also a *trustee* for all concerned, and so entitled to be dealt with *in equity.* By the present suit the Court of Probate is ousted of its right to settle the *distributive share* of each heir, and to *deduct advancements* made to each. The Judge of Probate is by law *solely* to settle all claims of the administrator, as a creditor to the estate — why not *as debtor also* ?

Again, the defendant was entitled to a previous citation upon authority. In the case of *Boston v. Boylston,* 2 *Mass.* 384, the language of the Court throughout shows that they considered it a settled point that there must be a citation to account further.

The Statute of 1821, *ch.* 51, *sec.* 71, 72, provides the remedy in *all cases* on Probate bonds. If by a *creditor,* he must first have his debt " *ascertained,*" &c. If by an *heir,* he "must produce" a copy of *the decree,* &c. It is *imperative* — a *condition precedent* to his recovery — *a sine qua non.* And so is *Coffin v. Jones,* 5 *Pick.* 61 ; 5 *N. H. Rep.* 70 ; *Boston v. Boylston,* 4 *Mass.* cited on the other side.

In *Stevens v. Gaylord,* 11 *Mass.* 256, if an administrator *acknowledge* the debt, it is held to be so much money in his hands, and as such he is bound to account for it. If he " admits the debt to be due," say the Court.

The administrator is not bound to put into the inventory mere evidences of debts. The appraisers fix no value upon such. *Nowell v. Nowell,* 2 *Greenl.* 79. He is to be sure to return a *list* of *evidences of debt* which come to his hands, e. g. notes, &c. but not to inventory. This is only of those things which are *appraised* — and they never appraise *debts.* He was not therefore in this instance bound to put these notes in the inventory. Surely not unless they *came to his hands.* They were *negotiable* notes — not in his hands — and for aught he knew, *negotiated.*

A case is supposed on the other side, where the administrator has been removed, or has deceased, without returning an inventory, when he cannot of course be cited. In answer it may be said, that *his* administrator can. See *Nowell v. Nowell,* 2 *Greenl.* 75.

It is said that great mischiefs would grow out of the construction contended for by the defendant. Not so, cite him to *account,* and appeal to his *conscience.* If he can *only* be sued on the bond, the heirs may lose their remedy. The mischiefs contemplated would arise from the plaintiff's construction, not the defendant's.

The opinion of the Court was delivered at the ensuing *April* term in this county by

MELLEN C. J. — This case is again before us on special demurrer, in consequence of the amendment of the pleadings under leave granted for that purpose. *See* 7 *Greenl.* 302 — 337. The plaintiff's surrejoinder is the subject of the demurrer; and to the question as to its sufficiency or insufficiency all the authorities produced and arguments urged have had immediate reference.

The plea in bar is intended as a special performance; and as such it has been considered by the plaintiff. In the replication he assigns a breach, which, stripped of its technical phraseology, amounts to this; namely, that the two promissory notes therein described, given by the defendant to the deceased came to, and were *in the knowledge of the defendant,* within three months next following the date of the bond declared on, a part of the goods and chattels, rights and credits of the said *Moses Titcomb*; and that it was the duty of the defendant to have caused them to be inserted in the inventory of the deceased's estate; but that the defendant neglected so to do. The defendant in his rejoinder alleges that the notes described in the replication were not *known* and *admitted* by him to be due and a part of the goods and chattels, rights and credits of said *Moses Titcomb* to be administered on, in manner as alleged by the plaintiff. In the surrejoinder the plaintiff alleges that the notes set forth in the replication and at the time therein mentioned, were justly due from the defendant and were *a part* of the goods and chattels, rights and credits of said *Moses Titcomb;* of all which the defendant was *well knowing* within the three months beforementioned; and the surrejoinder concludes to the country. The questions are, whether it is good in *substance* and in *form.* That part of the condition of the bond to which the alleged breach has reference, required the defendant to make "a true and perfect inventory of all and singular the "real estate, goods and chattels, rights and credits of said de- "ceased," which *had* or *should* come to his *hands, possession* or *knowledge,* or into the hands or possession of any *other* person or persons *for him,* and the same, so made, to exhibit or cause

to be exhibited upon oath into the registry of the Court of Probate within three months from the date of the bond. Has this part of the condition been performed? If the facts stated in the surrejoinder are well pleaded, then they are admitted by the demurrer; and if they are admitted, then the fact is, that the defendant did not make a true and perfect inventory of all the property of the deceased which had *come to his knowledge before* he made and exhibited the inventory. As a perfect inventory, according to the condition of the bond was to be made and exhibited within a specified and limited period, a delay to make and exhibit it within that period would have been a breach; the condition required no notice or request to the defendant to perform this duty, which by the terms of the condition, he had agreed to perform. If the omission to include the two notes in the inventory, was a breach of the condition, we need go no further: We need not inquire whether an inventory and an account are considered the same thing; or whether more than one inventory can ever be required; or in what cases a citation to an administrator is necessary. We pass over these inquiries, though the opening counsel for the defendant has seen proper to dwell upon them. With respect to his proposition that the part of the condition respecting the making and returning an inventory, is saved, if *any* inventory is returned, whether *true* or *false*, if returned within three months, we will only say, that we deem it utterly destitute of any legal foundation. The counsel asks whether an administrator is bound to inventory property which he does not know to belong to the intestate, or which he claims as his own. It is not necessary to answer these questions, if the surrejoinder is well pleaded; for if so, as we have before said, the facts it states are admitted, *viz.* that the notes were due — were a part of the estate of the deceased — and that *he knew* both those facts. But in the cases supposed by the above questions, an administrator might comply with the terms of the condition of the bond by inserting the property in the inventory, accompanied in the one case with a statement of the doubt as to ownership; and in the other, with a statement of his own *claim* of the property as his own. By this course, the condition of his

bond, and his own rights would be saved. There can be no doubt that an administrator is as much bound to inventory notes or bonds due from himself as from others. He cannot sue himself it is true, but he can and ought to place on record their amount for the benefit of all concerned ; otherwise, in case of his death, an administrator *de bonis non* might never arrive at the knowledge of their existence.

We now proceed to examine the causes of demurrer.

The *first three* and the 5th, 6th and 7th causes assigned, amount in fact, to the same thing, namely, that the surrejoinder does not traverse or deny the rejoinder, nor confess and avoid it.

The 4th cause is partly of the same character, and also has reference to the manner in which the surrejoinder is concluded to the country.

The 8th is that it is double and multifarious.

The 9th is merely formal.

To understand and appreciate the causes assigned, of the *first* class, we must look to the facts composing the rejoinder ; which are, that the two promissory notes were not *known* and *admitted* by the defendant to be due, and a part of the estate of the intestate. In the surrejoinder the plaintiff passes over and takes no notice of the defendant's *non-admission* of his indebtedness and that the notes were a part of the intestate's estate, and traverses merely the defendant's alleged *want of knowledge* of those two facts. It can require neither argument or authority to prove that where a man is under a legal obligation to do a certain act, he cannot excuse his non-performance of the act, merely by alleging that he does not *admit* the existence of such legal obligation. To sanction such logic in a Court of law would be to constitute every defendant a judge in his own cause, and the manufacturer of his own defence. The defendant, by the condition of the bond, was *bound* to inventory all the property which, *to his knowledge*, belonged to the estate of the intestate, whether he *admitted* the fact to be so or not. The allegation in the rejoinder, therefore, as to what the defendant did or did not *admit* to be true, is of no importance ; it is an averment wholly *immaterial*, which the plaintiff was not bound to notice in his surrejoinder. " The

" general rule is that a traverse must be taken to some *material* " point alleged by the adverse party, which, if found for him " who takes it, absolutely destroys the adverse party's right, by " shewing he hath none in manner and form as he has alleged." 2 *Saund.* 5, 175, *note* 1; 5 *Bac. Abr.* 390; *Roll. Rep.* 235. " Where the allegation is *not material* it cannot be traversed." 1 *Ch. Pl.* 586. Suppose that the defendant in his rejoinder had merely alleged that the notes were not *admitted* by him to be due and a part of the estate of the deceased; surely, in such case, it would have been bad on demurrer, as containing nothing but an immaterial and useless allegation. The character of the fact alleged did not become in any manner changed by being connected in the rejoinder with the *other* fact, namely, that the notes were not *known* to be due and a part of the estate of the deceased. As this alleged *want of knowledge* on the part of the defendant, is the only *material* fact averred in the rejoinder, we are well satisfied, for the reasons given, that the traverse of that fact was proper; and that the surrejoinder is not bad for any of the causes assigned, of the *first* class.

We are equally clear that the *fourth* cause assigned, is insufficient. When the plaintiff denies the fact stated in the plea, whether in cases of contract or tort, a replication to the country is frequent; and it is the better and shorter way. 1 *Ch. Pl.* 592. The same principle is equally applicable to a rejoinder and surrejoinder. " Where there is an *affirmative* on one side " and a *negative* on the other, or *vice versa*, the conclusion must " be to the country." 1 *Saund.* 103, *note* 1, and cases there cited. The only material fact alleged in the rejoinder is the defendant's *want of knowledge* that the notes were due and a part of *Moses Titcomb's* estate; and this fact is expressly denied or traversed by the surrejoinder. Upon the correct principles of pleading, the conclusion to the country was strictly proper.

The multifariousness and duplicity complained of in the 8th cause assigned, are, that the notes in question at the time the inventory was made and returned, were due, and a part of the estate of the intestate, and that the defendant well knew those facts. These are alleged to be separate, distinct, issuable facts.

*Chitty, vol.* 1, *page* 512, says, " The defendant is not preclud-
" ed from introducing several matters into his plea, if they are
" constituent parts of the same entire defence and form one
" connected proposition.   Thus in detinue at the suit of a *feme,*
" the defendant pleaded that after the bailment of the goods to
" him by the plaintiff, she married E. F. and that during the
" marriage, E. F. released to him all actions.   It was objected
" that the plea was double, *viz.* property in the husband and a
" release by him ; but it was resolved not to be double, because
" he could not plead the release without showing the marriage."
—— To same point are *Robinson v. Rayley,* 1 *Bur. R.* 316.
*Lord Mansfield* says, " Tis true you must take issue on a sin-
" gle point ; but it is not necessary that this single point should
" consist only of a single fact." —— To the same principle are
*Strong & al. v. Smith,* 3 *Caines,* 160 ; *Currie & al. v. Henry,*
2 *Johns. R.* 433 ; *Patcher v. Sprague, ib.* 462 ; and it is equal-
ly applicable in any stage of the proceedings.   In the case be-
fore us both the facts stated in the surrejoinder were necessary.
For if the notes in question were a part of the estate, still if
the defendant did not know the fact, it *would have been no*
breach of the condition not to inventory them.   In the replica-
tion it is stated that both the notes are negotiable ; and it is no
where stated that they were in the *possession* of the defendant,
but only that they came to and were in his *knowledge.*   As
they might have been in the hands of an indorsee, unknown to
the defendant, it was necessary to bring his neglect within the
terms of the condition to allege that the notes, at the time men-
tioned, were due to, and a part of the estate, and that the de-
fendant knew it.   This objection, therefore, has no legal foun-
dation.

The opinion of the Court is, and they accordingly adjudge
that the *surrejoinder is good and sufficient.*